UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| LATISHA D. B.[1], <br>    Plaintiff, <br><br> vs. <br><br> COMMISSIONER OF <br> SOCIAL SECURITY, <br>    Defendant. | Case No. 2:22-cv-3875 <br> Morrison, J. <br> Litkovitz, M.J. <br><br><br> REPORT AND <br> RECOMMENDATION |

Plaintiff Latisha B. brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) for judicial review of the final decision of the Commissioner of Social Security (Commissioner) denying plaintiff's application for supplemental security income (SSI). This matter is before the Court on plaintiff's Statement of Errors (Doc. 8), the Commissioner's response (Doc. 9), and plaintiff's reply (Doc. 10).

**I. Procedural Background**

Plaintiff protectively filed her application for SSI on January 6, 2020, alleging disability since March 7, 2019, due to seizures, migraines, dizziness, depression, intractable epilepsy, asthma, bipolar disorder, and hearing loss. (Tr. 15, 266). The application was denied initially and on reconsideration. Plaintiff, through counsel, requested and was granted a *de novo* hearing before administrative law judge (ALJ) Jeffrey Hartranft on May 13, 2021. (Tr. 33-96). Plaintiff and a vocational expert (VE) appeared by telephone and testified at the ALJ hearing. (*Id.*). On October 12, 2021, the ALJ issued a decision denying plaintiff's application. (Tr. 12-27). This

---

[1] Pursuant to General Order 22-01, due to significant privacy concerns in social security cases, any opinion, order, judgment or other disposition in social security cases in the Southern District of Ohio shall refer to plaintiffs only by their first names and last initials.

decision became the final decision of the Commissioner when the Appeals Council denied review on August 31, 2022.  (Tr. 1-4).

**II.  Analysis**

    **A.  Legal Framework for Disability Determinations**

To qualify for disability benefits, a claimant must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months.  42 U.S.C. § 1382c(a)(3)(A). The impairment must render the claimant unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy.  42 U.S.C. § 1382c(a)(3)(B).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process for disability determinations:

    1) If the claimant is doing substantial gainful activity, the claimant is not disabled.

    2) If the claimant does not have a severe medically determinable physical or mental impairment – *i.e.*, an impairment that significantly limits his or her physical or mental ability to do basic work activities – the claimant is not disabled.

    3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.

    4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.

    5) If the claimant can make an adjustment to other work, the claimant is not disabled.  If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009) (citing 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 404.1520(b)-(g)). The claimant has the burden of proof at the first four steps of the sequential evaluation process. *Id.*; *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004). Once the claimant establishes a prima facie case by showing an inability to perform the relevant previous employment, the burden shifts to the Commissioner to show that the claimant can perform other substantial gainful employment and that such employment exists in the national economy. *Rabbers*, 582 F.3d at 652; *Harmon v. Apfel*, 168 F.3d 289, 291 (6th Cir. 1999).

### B. The Administrative Law Judge's Findings

The ALJ applied the sequential evaluation process and made the following findings of fact and conclusions of law:

1. [Plaintiff] has not engaged in substantial gainful activity since January 6, 2020, the application date (20 CFR 416.971 *et seq.*).

2. [Plaintiff] has the following severe impairments: seizure disorder; migraine headaches; lumbar muscle strain; bipolar disorder; personality disorder and alcohol abuse disorder (20 CFR 416.920(c)).

3. [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

4. After careful consideration of the entire record, I find that [plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except frequent climbing ramps and stairs; no climbing ladders, ropes or scaffolds; frequent stooping; avoid workplace hazards, such as unprotected heights and machinery, no commercial driving and occasional exposure to temperatures above 90 degrees Fahrenheit. [Plaintiff] is further limited to routine and repetitive tasks involving only simple, work-related

decisions with few, if any, workplace changes and no strict production quotas or fast paced work and occasional interaction with the general public, co-workers and supervisors with no tandem tasks and no customer service responsibilities.

5. [Plaintiff] is unable to perform any past relevant work (20 CFR 416.965).[2]

6. [Plaintiff] was . . . 38 years old, which is defined as a younger individual age 18-49, on the date the application was filed (20 CFR 416.963).

7. Plaintiff has a limited education (20 CFR 416.964).

8. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that [plaintiff] is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

9. Considering [plaintiff]'s age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that [plaintiff] can perform (20 CFR 416.969 and 416.969a).[3]

10. [Plaintiff] has not been under a disability, as defined in the Social Security Act, since January 6, 2020, the date the application was filed (20 CFR 416.920(g)).

(Tr. 17-27).

**C. Judicial Standard of Review**

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by substantial evidence, and (2) whether the ALJ applied the correct legal standards. *See Blakley v.*

---

[2] Plaintiff's past relevant work was as a composite between a sorter/pricer (light exertion) and a cashier II (light exertion), and as a pizza baker (medium exertion, performed as light). (Tr. 25-26, 84-85).
[3] The ALJ relied on the VE's testimony to find that plaintiff would be able to perform the requirements of representative light, unskilled occupations in the national economy such as collator operator (12,113); cleaner/housekeeper (135,140 jobs); and produce weigher (7,450 jobs). (Tr. 26, 88-89).

*Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).

The Commissioner's findings must stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, ___ U.S. ___, 139 S. Ct. 1148, 1154 (2019) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance. . . ." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court considers the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

The Court must also determine whether the ALJ applied the correct legal standards in the disability determination. Even if substantial evidence supports the ALJ's conclusion that the plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers*, 582 F.3d at 651 (quoting *Bowen*, 478 F.3d at 746).

**D. Specific Errors**

On appeal, plaintiff raises a narrow assignment of error related to the ALJ's determination of her mental residual functional capacity (MRFC).[4] Plaintiff argues that the ALJ failed to include the limitation on superficial interaction opined by the state agency psychological consultants, whose opinions he found persuasive. Plaintiff argues that the term "superficial

---

[4] Plaintiff does not raise any arguments related to the ALJ's determination of her physical RFC and any such arguments are therefore deemed waived. *See Kuhn v. Washtenaw Cnty.*, 709 F.3d 612, 624 (6th Cir. 2013) ("This court has consistently held that arguments not raised in a party's opening brief, as well as arguments adverted to in only a perfunctory manner, are waived.") (citation omitted).

interaction" is "not vocationally *irrelevant*"—noting that districts courts in this Circuit and others appreciate that "superficial" connotes a qualitative as opposed to a quantitative limitation on a claimant's interactions with others. (Doc. 8 at PAGEID 568 (emphasis added)). Plaintiff argues that the ALJ "did not explain how or why a limitation to no tandem tasks or no customer service accounted for a limitation to superficial interaction." (*Id.* at PAGEID 570).[5] Consequently, plaintiff argues that the ALJ erred by excluding the superficial-interaction limitation, a limitation derived from an opinion he found persuasive, from his residual functional capacity (RFC) determination without explanation.

In response, the Commissioner agrees that "superficial" is a qualitative as opposed to a quantitative limitation and argues, instead, that "the issue is whether the ALJ accounted for the limitation to superficial interaction in his RFC finding." (Doc. 9 at PAGEID 576-77). The Commissioner argues that the ALJ was permitted to convert the state agency psychological consultants' opinion into vocationally relevant terms, and that the vocationally relevant terms used by the ALJ here ("no tandem tasks and no customer service responsibilities" (Tr. 21)) have been held to adequately account for an opinion limiting a claimant to superficial interaction with others by courts within the Sixth Circuit. Finally, the Commissioner argues that the ALJ explained why he declined to adopt the definition of "superficial" proffered by plaintiff's counsel,

---

[5] Plaintiff implies that an Appeals Council decision related to an entirely different claim/claimant is binding on this issue: "[T]he Appeals Council has specifically defined superficial, and instead of adopting that limitation, the ALJ disregarded the definition and arbitrarily created a completely different definition." (*Id.*). The undersigned has already rejected this argument. *Markcus C. v. Comm'r of Soc. Sec.*, No. 2:22-cv-1917, 2023 WL 1783514, at *1 (S.D. Ohio Feb. 6, 2023) ("[P]laintiff contends [that] this matter must be remanded so that the ALJ can reevaluate plaintiff's claimed disability using the 'superficial interaction' definition the Appeals Council employed in the unrelated case. The Court disagrees."), *report and recommendation adopted*, 2023 WL 2162261 (S.D. Ohio Feb. 22, 2023).

6

which was inconsistent with other aspects of the state agency psychological consultants' opinions and other record evidence.

In reply, plaintiff makes two arguments. The first responds to the Commissioner's argument that the ALJ accounted for the state agency psychological consultants' limitation to superficial interaction; plaintiff argues that the ALJ's decision does not reflect conversion of the term "superficial interaction" into vocationally relevant terms but rather reflects that he rejected this portion of the opinion as not persuasive. Plaintiff's second argument does not respond to the Commissioner's arguments; rather, plaintiff argues for the first time that the ALJ erred because his qualitative limitations accounted only for the state agency psychological consultants' opinions related to interaction with coworkers and the public but not supervisors.

As an initial matter, the Court notes that the ALJ was "not required to recite the medical opinion of a physician verbatim in his residual functional capacity finding." *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 157 (6th Cir. 2009). This is so even where an opinion is assigned significant weight. *Reeves v. Comm'r of Soc. Sec.*, 618 F. App'x 267, 275 (6th Cir. 2015) ("Even where an ALJ provides 'great weight' to an opinion, there is no requirement that an ALJ adopt a state agency psychologist's opinions verbatim" or "limitations wholesale."). At the same time, "[i]f the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." Social Security Ruling (SSR)[6] 96-8p, 1996 WL 374184, at *7 (July 2, 1996).

---

[6] "Social Security Rulings do not have the force and effect of law, but are 'binding on all components of the Social Security Administration' and represent 'precedent final opinions and orders and statements of policy and interpretations' adopted by the Commissioner." *Ferguson v. Comm'r of Soc. Sec.*, 628 F.3d 269, 272 n.1 (6th Cir. 2010) (quoting 20 C.F.R. § 402.35(b)(1)).

Here, the state agency psychological consultants found that plaintiff was moderately limited in her ability to interact appropriately with the general public, accept instructions and respond appropriately to criticism from supervisors, and get along with coworkers or peers without distracting them or exhibiting behavioral extremes. (Tr. 104, 113). They found that plaintiff was not significantly limited in her ability to ask simple questions or request assistance and had no limitation in her ability to maintain socially appropriate behavior. (*Id.*). As explanation for these limitation opinions, they remarked that plaintiff attended church and visited family members. (Tr. 104, 113-14). They narratively opined that plaintiff could "occasionally and superficially interact with coworkers, supervisors and the general public." (Tr. 104, 113).

The ALJ found the state agency psychological consultants' opinions "persuasive" but also included the following qualification:

> [T]he term "superficial" is not a vocationally relevant term and thus, limiting [plaintiff] to "superficial" interaction with co-workers, supervisors and the public is not persuasive. While [plaintiff]'s representative offered a description of the term superficial in his questioning of the vocational expert,[7] I do not find that [plaintiff] is so limited and therefore have not included a "superficial" limitation in the RFC. However, I further clarified the claimant's communications limitations, by limiting her to occasional interaction with no tandem tasks or customer service responsibilities.

(Tr. 24).

---

[7] That description was the following:

> [T]he way I'm defining [superficial interaction] for the purposes of my question would be cursory or in passing such as cleaning out a breakfast table. You pass somebody and you say good morning or hello. And then kind of continue on and that's kind of the extent of that interaction.

(Tr. 92).

8

The Court finds that ALJ's decision accounted for the state agency psychological consultants' limitation to superficial interaction with coworkers, supervisors, and the general public. While plaintiff urges the Court to find that the ALJ rejected this opinion without adequate explanation, a reading of the passage quoted above in the context of the ALJ's decision as a whole demonstrates that what the ALJ rejected was the definition of superficial interaction proffered by plaintiff's counsel. *See* SSR 96-8P, 1996 WL 374184, at *7 (the ALJ must "explain how any material . . . ambiguities in the evidence in the case record were considered and resolved."). The ALJ "clarified" plaintiff's interaction limitations by using vocationally relevant terms. (Tr. 24). Those terms ("no tandem tasks or customer service responsibilities") (*id.*) reflect qualitative restrictions consistent with the record as discussed by the ALJ elsewhere in his opinion[8] and the state agency psychological consultants' own relatively minor social interaction limitation ratings (*see* Tr. 104, 113). *See Stoodt v. Comm'r of Soc. Sec.*, No. 3:20-cv-2370, 2022 WL 721455, at *16 (N.D. Ohio Jan. 13, 2022) (quoting *Modro v. Comm'r of Soc. Sec.*, No. 2:18-cv-900, 2019 WL 1986522, at *7 (S.D. Ohio May 6, 2019)) ("[I]t may fall to the ALJ to 'convert[ ] and incorporate[ ]' the limitations set forth in a medical opinion 'into vocationally relevant terms' – i.e., terms that are relevant and meaningful in the DOT / SCO and/or the VE's own

---

[8] When discussing the mental functioning areas, the ALJ found plaintiff only moderately limited in the area of interacting with others—noting plaintiff's reports that she attended church, visits with family, and talks on the phone regularly; had no problem with family, friends, or neighbors; and that she did not have major problems interacting with authority figures and had no such trouble in prior jobs. (Tr. 20). When discussing plaintiff's mental health impairments, the ALJ noted minimal treatment, improvement with medication, unremarkable mental status examinations, and plaintiff's reports that she didn't think that her mental health would prevent her from working and that she performed well in prior jobs. (*See* Tr. 23). *Cf. Collins v. Comm'r of Soc. Sec.*, No. 3:17-cv-2059, 2018 WL 7079486, at *6 (N.D. Ohio Dec. 7, 2018) (the ALJ's consideration of the plaintiff's social abilities earlier in her decision provided substantial evidence for her ultimate decision to omit a superficial-interaction limitation and instead include a limitation against team or tandem tasks), *report and recommendation adopted*, 2019 WL 1409535 (N.D. Ohio Mar. 28, 2019).

vocational experience – before including those limitations in a hypothetical posed to a VE.") (latter alterations in original), *report and recommendation adopted*, 2022 WL 716105 (N.D. Ohio Mar. 10, 2022).

Several courts within this Circuit have found that the same or similar vocational terms account for the qualitative connotation of the term "superficial." *See Kelsey v. Comm'r of Soc. Sec.*, No. 1:22-cv-280, 2022 WL 18358921, at *6 (W.D. Mich. Dec. 29, 2022) (restricting the plaintiff "to no interaction with the public, occasional interaction with supervisors and coworkers, and no tandem or cooperative tasks" represented "significant limitations . . . on the quality of the interaction, essentially amount[ing] to no more than superficial contact with supervisors and coworkers"), *report and recommendation adopted*, 2023 WL 246884 (W.D. Mich. Jan. 18, 2023); *Stamper v. Comm'r of Soc. Sec.*, No. 1:20-cv-467, 2021 WL 5577405, at *14 (S.D. Ohio Nov. 30, 2021) ("Given [the ALJ's thorough review of medical records reflecting generally normal mental health findings] and the fact that the ALJ included limitations on the nature/quality (as opposed to only the frequency) of interactions, the Court finds that the ALJ's mental RFC determination took the state agency psychologists' opinions regarding "superficial" interactions into account and was based on substantial evidence."), *report and recommendation adopted sub nom. Stamper v. Kijakazi*, 2022 WL 1183234 (S.D. Ohio Apr. 21, 2022); *Dickinson v. Comm'r of Soc. Sec.*, No. 2:19-cv-3670, 2020 WL 4333296, at *12 (S.D. Ohio July 28, 2020) ("The Court agrees that the limitation to no tandem tasks is a qualitative limitation on social interaction. As such, this limitation adequately addressed the opinion of [the state agency consultants] that Plaintiff be limited to superficial interaction with others."), *report and recommendation adopted*, 2020 WL

5016823 (S.D. Ohio Aug. 25, 2020); *Kearns v. Comm'r of Soc. Sec.*, No. 3:19-cv-1243, 2020 WL 2841707, at *12 (N.D. Ohio Feb. 3, 2020) ("[T]he ALJ's limitation to no team or tandem tasks is a qualitative limitation on social interaction and adequately addressed the opinion of [the state agency consultants] that Kearns be limited to superficial interaction with others."), *report and recommendation adopted*, 2020 WL 2839654 (N.D. Ohio June 1, 2020); *Collins*, 2018 WL 7079486, at *6 ("[T]he ALJ restricted Plaintiff from "team or tandem tasks" (Tr. 15), which logically require more than superficial interpersonal contact. This is a restriction on the quality of interpersonal contact."). Based on the foregoing, the ALJ properly converted the superficial-interaction limitation into relevant vocational terms for incorporation into the MRFC, and the ALJ's assessment of plaintiff's MRFC is based on substantial evidence.

Plaintiff's final argument, that the ALJ's MRFC determination does not take into account a qualitative limitation on plaintiff's interaction with *supervisors* in particular, is not well-taken. As an initial matter, the argument was raised for the first time in reply and not in response to the Commissioner's arguments. *See Fagin ex rel. B.P. v. Comm'r of Soc. Sec.*, No. 1:10-cv-813, 2012 WL 213801, at *11 n.1 (S.D. Ohio Jan. 24, 2012), *report and recommendation adopted sub nom. Fagin v. Comm'r of Soc. Sec.*, 2012 WL 481787 (S.D. Ohio Feb. 14, 2012) (holding that a moving party may not raise new issues for the first time in its reply brief). Even if the Court were to address its merits, however, the argument is unavailing. Plaintiff argues that the ALJ's limitations of "no tandem tasks and no customer service responsibilities" (Tr. 21) do not relate to supervisors because "[c]ustomer service deals with . . . the general public, and no tandem tasks deals with . . . coworkers." (Doc. 10 at PAGEID 583). Plaintiff does not support this proposition

11

with authority, and several of the cases discussed above suggest that the limitation to "no tandem tasks" encompass supervisors. See *Kelsey*, 2022 WL 18358921, at *6 ("[N]o tandem or cooperative tasks" was a qualitative limitation—essentially limiting plaintiff to "superficial contact with supervisors *and* coworkers"—and, combined with the quantitative "occasional" limitation, served to limit the plaintiff "to minimal engagement with *both* supervisors and coworkers.") (emphasis added); *Stamper*, 2021 WL 5577405, at *7, 14 (the state agency psychologist opined that the plaintiff was limited to superficial interaction with supervisors, coworkers, and the general public; and the undersigned concluded that a limitation to no "tandem or shared tasks" adequately accounted for this opinion); and *Dickinson*, 2020 WL 4333296, at *4, 11-12 (holding that a limitation to "no tandem tasks" adequately addressed the state agency psychological consultants' opinion that the plaintiff should have only superficial contact with coworkers and supervisors). This argument is therefore not persuasive.

## IT IS THEREFORE RECOMMENDED THAT:

1. Plaintiff's Statement of Errors (Doc. 8) be **OVERRULED**.
2. The Court **AFFIRM** the Commissioner's non-disability finding.

Date: 7/25/2023

Karen L. Litkovitz
Chief United States Magistrate Judge

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

LATISHA D. B.,
    Plaintiff,

vs.

COMMISSIONER OF
SOCIAL SECURITY,
    Defendant.

Case No. 2:22-cv-3875
Morrison, J.
Litkovitz, M.J.

## NOTICE

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned district judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).